IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| ANDREA CONSTAND, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 15-5799 |
| | : | |
| v. | : | |
| | : | |
| BRUCE CASTOR, | : | |
| | : | |
| Defendant. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    October 3, 2016


     Before the Court are several nonparties' motions to
intervene for the purposes of attending, participating in, or
asserting privileges during two different depositions in this
case. For the reasons that follow, the Court will grant in part
and deny in part William H. Cosby, Jr.'s motion for leave to
attend (through counsel) the deposition of Andrea Constand, deny
Cosby's motion for leave to participate in the deposition of
Judge Risa Vetri Ferman, and deny Judge Ferman's motion for a
protective order concerning several privileges she may wish to
assert at her deposition.

## I.   BACKGROUND

This case arises from the same incident at the root of
Constand v. Cosby, No. 05-1099. According to the Complaint, in
January 2004, Cosby drugged and sexually assaulted Plaintiff
Andrea Constand in Montgomery County, Pennsylvania. Compl. ¶ 12,
ECF No. 1. A year later, Constand reported Cosby's actions to
police in Durham, Ontario, who then forwarded the complaint to
Pennsylvania authorities. Id. ¶¶ 13-14. The office of Defendant
Bruce Castor – then, the Montgomery County District Attorney –
was tasked with investigating the complaint. Id. ¶ 15.

On February 10, 2005, Castor stated that he viewed the
case against Cosby to be "weak." Id. ¶ 17. Following that
statement, several other women leveled similar accusations
against Cosby. Id. Shortly thereafter, Castor issued a press
release announcing his decision not to prosecute Cosby. Castor
did not inform Constand of his decision prior to releasing it to
the media. Id. ¶¶ 18-20.

Nearly ten years later, the underlying events became
national news again, as many more women publicly accused Cosby
of conduct similar to that alleged in Constand's original
complaint. Id. ¶ 23. Meanwhile, Castor – whose tenure as
District Attorney ended in 2008 – decided to seek the office of
District Attorney again. Id. ¶ 24. During the course of his

electoral campaign, he publicly discussed Andrea Constand and
Bill Cosby a number of times, including the following:

- He said both Constand and Cosby could be portrayed in
  "a less than flattering light," and that Constand's
  statements to the police contained less detail than
  her civil complaint. Id. ¶ 27.

- He gave a statement to the Philadelphia Inquirer about
  Constand's statements to the police differing from
  those in her civil suit, then – in reference to an
  Inquirer article including his statement – tweeted:
  "Inky: Cosby victim told police much different than
  she told court in her lawsuit. First I saw that in a
  story. Troublesome for the good guys. Not good." Id.
  ¶¶ 29-31.

- He said that he had signed a declaration that he would
  not prosecute Cosby on any information coming out of
  the Constand civil suit. Constand alleges that he made
  this statement in order to bolster his claim that
  Constand was not a credible witness. Id. ¶¶ 32-35.

Plaintiff filed the instant Complaint on October 26,
2015. ECF No. 1. It contains two claims: defamation/defamation
per se, and false light/invasion of privacy. Castor filed an
Answer on December 28, 2015. ECF No. 5.

On February 10, 2016, Cosby filed a Motion to
Intervene and for a Protective Order. ECF No. 9. In that motion,
he requested a protective order precluding Constand from
producing – in response to Castor's discovery requests – (1) the
confidential settlement agreement ("CSA") from Constand v.
Cosby, and (2) all statements Constand gave to police in
2004-05.

Shortly thereafter, two other nonparties filed motions to quash subpoenas. Kevin Steele, the current Montgomery County District Attorney, moved to quash a subpoena in which Castor demanded all of Constand's 2004-05 statements in the DA Office's possession, on the grounds that the statements were protected by both Pennsylvania's Criminal History Record Information Act ("CHRIA") and by common law investigative privilege. And Brian McMonagle — Cosby's criminal lawyer — moved to quash a subpoena that demanded, in effect, all of his prior communications with and concerning Bruce Castor.

On April 15, 2016, the Court held a hearing on Cosby's motion for a protective order and the motions to quash subpoenas. At that hearing, the parties and movants indicated that they had resolved some of the issues on their own.[1] Accordingly, the Court denied without prejudice Cosby's motion for a protective order and Steele's motion to quash. The remaining issues concerning Castor's pursuit of Constand's police statements were also later resolved.[2]

_____

[1]     The issues raised by McMonagle's motion to quash had not been resolved. The Court granted his motion in part and denied his motion in part, ordering McMonagle to produce his communications with Castor and to produce a privilege log containing any communications about Castor. ECF No. 31.

[2]     The Court will thus deny as moot Castor's Motion for More Definite Statement, ECF No. 52, which Castor withdrew during a hearing on September 7, 2016.

This case is now in the discovery stage and several nonparties have filed motions to intervene. Cosby has filed a motion to intervene so that he may participate in the deposition of Judge Risa Vetri Ferman – who, in her prior capacity, succeeded Castor as Montgomery County District Attorney – and a motion to intervene so that he may attend the deposition of Andrea Constand. Judge Ferman has also filed a motion to intervene for the limited purpose of asserting several privileges with respect to her deposition. These motions are now ripe for disposition.

## II.  MOTIONS TO INTERVENE

Federal Rule of Civil Procedure 24 governs nonparties' attempts to intervene in cases for various reasons. There are two primary types of Rule 24 intervention: intervention of right and permissive intervention.

Rule 24(a) – "Intervention of Right" – provides that, "[o]n timely motion, the court must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A non-party may intervene under Rule 24(a)(2)

only if: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995) (quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987)).

Rule 24(b) – "Permissive Intervention" – applies where a movant is not entitled to intervention of right under Rule 24(a), but still has a valid reason to intervene in the case. It provides that, "[o]n timely motion, the court may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to allow or reject permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." R. 24(b)(3).

Where Rule 24(a) contains mandatory language – the court "must permit" intervention, so long as certain conditions are satisfied – Rule 24(b) is permissive, stating only that the court "may permit" intervention. A ruling on a Rule 24(b) motion is a "highly discretionary decision." Brody By and Through Sugzdinis v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992).

Cosby brings one motion to intervene under Rule 24(a) and one motion to intervene under Rule 24(b). Judge Ferman also brings a motion to intervene under Rule 24(b).

A.   Cosby Rule 24(a) Motion

First, Cosby seeks leave to intervene, under Rule 24(a), to attend the deposition of Andrea Constand. He contends that he has a right to intervene in order to protect his rights to confidentiality under the CSA, as he anticipates that Constand will be asked questions during her deposition that she cannot answer without violating the CSA. Therefore, he argues that his counsel should be present during the deposition in order to object to questions that intrude upon protected areas, and to seek immediate resolution from the Court if necessary.

The critical question here is whether Cosby's desire to protect information that he alleges is protected by a confidential settlement agreement suffices to create an "interest" under Rule 24(a).[3] At least two courts outside this district have held that a movant's interest in safeguarding the confidentiality of particular information constitutes a cognizable Rule 24(a) interest. See In re Sealed Case, 237 F.3d 657, 663-64 (D.C. Cir. 2001); In re Chocolate Confectionary

---

[3]     As the Third Circuit has recognized, "the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition." Mountain Top, 72 F.3d at 366.

<u>Antitrust Litig.</u>, No. 08-MDL-1935, 2008 WL 4960194, at *1 (M.D. Pa. Nov. 18, 2008). But at least two courts within this district have held otherwise. <u>See</u> <u>Burlington v. News Corp.</u>, No. 09-1908, 2015 WL 2070063, at *2 (E.D. Pa. May 4, 2015) (finding that an interest in enforcing a confidential settlement agreement from a previous case is merely collateral and not an "interest in [the] litigation"); <u>Liberty Res., Inc. v. Phila. Hous. Auth.</u>, 395 F. Supp. 2d 206, 208 (E.D. Pa. 2005) (holding that "confidentiality concerns about certain discovery" are "peripheral to the litigation" and thus not a sufficient interest under Rule 24(a)). Neither the parties nor Cosby have identified any controlling cases on this issue.

Under the circumstances of this case, the Court finds that Cosby's interest in confidentiality is sufficient to support limited intervention under Rule 24(a).[4] Importantly, unlike the would-be intervenors in <u>Burlington</u> and <u>Liberty Resources</u>, Cosby's interests are not already represented by an existing party. Though it is true that Constand was also a party to the confidentiality agreement Cosby now seeks to enforce, Cosby and Constand have demonstrated that they have different

---

[4]     The Court is satisfied that Cosby has also established the other three <u>Mountain Top</u> factors: his motion was timely, his interest might be impaired through this litigation and, for the reasons discussed in this memorandum, his interest is not adequately represented by an existing party.

interpretations of the scope of the CSA's confidentiality provision. Specifically, Cosby believes the provision to be more expansive than Constand does, with the practical result being that Constand may make statements that she believes to be proper under the CSA, while Cosby believes that those statements violate the CSA.

However, Cosby's interest is a limited one, conditioned upon his own interpretation of the CSA being correct, and Constand's interpretation being incorrect. If Constand is right, then she adequately represents Cosby's interest in confidentiality, and Cosby is not entitled to intervene. And Cosby's proposed form of intervention – his counsel being present at the deposition and calling the Court if necessary to resolve important disputes – would, as a practical matter, serve little to no purpose. There is no reason for Cosby to be present at the deposition to object as to matters on which he and Constand agree; Constand already represents his interests to that extent. As to matters on which Cosby and Constand disagree, Constand would not be obligated to honor Cosby's objections to any given question, and the Court would not be in a position to resolve any disputes over the scope of the confidentiality provision during a contemporaneous phone call, given that the Court has never been presented with the full CSA and has never ruled on the meanings of any of its provisions.

Therefore, the Court will fashion the following procedure, which will allow Cosby to – at least in large part[5] – protect the interests he claims without unnecessarily interfering with the parties' right to conduct an unobstructed deposition: Cosby and his counsel will not attend Constand's deposition. The parties and their counsel are directed not to discuss, except with each other, the contents of the deposition.[6] Following the deposition, an expedited transcript shall be generated. The transcript will be sealed for thirty days, during which time Cosby may file any objections to particular questions asked and/or answers provided during the deposition. The Court will then consider any objections and responses thereto and determine whether to strike the questions and/or answers at issue, to keep the deposition under seal for good cause shown,

---

[5]      While it is true that Constand could, hypothetically, violate the CSA simply by revealing confidential information to Castor and/or his counsel during her deposition, the procedure set forth by the Court should, at least, prevent further and greater violations of any confidentiality rights Cosby properly holds under the CSA. And, as discussed above, the Court is unconvinced that Cosby's counsel's physical presence at the deposition would actually prevent Constand from revealing any confidential information to Castor, at any rate. Moreover, it is unclear whether Constand and Cosby could have bargained away Castor's ability to receive relevant information in discovery in the instant case. See Green v. Cosby, 314 F.R.D. 164, 170 (E.D. Pa. 2016) ("An agreement between two parties to keep materials confidential cannot block the disclosure of those materials to third parties in discovery.").

[6]      This order, if violated, may subject the parties and counsel to appropriate sanctions.

to lift the seal, or to resolve the matter in some other way.

In this way, the Court will grant in part Cosby's Motion to Intervene, but deny his requested form of intervention.

B.    Cosby Rule 24(b) Motion

Cosby filed a separate motion to intervene under Rule 24(b), seeking leave to participate in the deposition of Judge Risa Vetri Ferman, who succeeded Castor as Montgomery County District Attorney.[7]

In this motion, Cosby argues that the Court should permit him to intervene because this action "shares numerous common factual issues" with his criminal case. Mot. Clarify at 11, ECF No. 43. Specifically, he says, "[t]he contents of Ms. Constand's initial statements to police, and the interpretation of those statements, and related investigation by the Montgomery County District Attorney's Office, are all key factual issues in both cases." Id. Moreover, he claims, "[t]he contents of Ms. Constand's statements about her allegations against Mr. Cosby – and the extent to which those statements are internally inconsistent – go to the heart of this defamation lawsuit and are simultaneously critical in the pending criminal case." Id.

---

[7]      In support of this motion, Cosby also filed a Motion for Leave to File a Supplemental Memorandum, ECF No. 70, which the Court will grant.

at 11-12. In effect, Cosby seeks to use Judge Ferman's deposition in this civil matter to obtain discovery for use in his criminal case. <u>See</u> Hr'g Tr. 37:14-18, Sept. 7, 2016 (THE COURT: "Well, isn't that effectively taking discovery for a criminal case?" [COUNSEL FOR COSBY]: "It may be taking – it may be availing yourself of the opportunity to learn information that will benefit you in a criminal case.").

It may be true that consistencies and/or inconsistencies between Constand's statements to the police and her claims in her 2005 civil lawsuit will be relevant in both this civil case and Cosby's criminal case. It may also be true that the circumstances surrounding the decision not to prosecute Cosby in 2005 will be relevant in both cases. In that sense, it is likely true that Cosby's defense in his criminal case shares "common question[s] of . . . fact" with this case. Fed. R. Civ. P. 24(b)(1)(B).[8]

However, Cosby is incorrect that "[t]here is nothing under the law to prevent" him from using this civil case to

---

[8]     Notably, however, some courts have denied permissive intervention "even though the petition presents a common question of law or fact" where the movant raised "claims collateral or extrinsic to the questions presented in the original proceedings," as is the case here. <u>See</u> <u>Johnson v. Cohen</u>, No. 84-6277, 1986 WL 785, at *1 (E.D. Pa. Jan. 9, 1986) (quoting <u>Subaqueous Exploration of Archaeology, Ltd. v. Unidentified, Wrecked & Abandoned Vessel</u>, 577 F. Supp. 597, 602-03 (D. Md. 1983)).

obtain discovery for his state criminal case. Hr'g Tr. 37:19.
Though Rule 24(b) does not explicitly include jurisdictional
language, courts have read into the rule a requirement that,
before granting permissive intervention, a court must have "an
independent ground for subject matter jurisdiction" over the
claim the movant asserts as the basis for intervention. E.E.O.C.
v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir.
1998) ("Permissive intervention . . . has always required an
independent basis for jurisdiction."); see also, e.g., Beckman
Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir.
1992); Barrett v. McDonald, No. 14-742, 2015 WL 237165, at *2
(D. Del. Jan. 16, 2015); Intellectual Ventures I LLC v. AT&T
Mobility LLC, Nos. 12-193, 13-1631, 13-1634, 13-1635, 13-1668,
13-1669, 13-1670, 13-1671, 13-1672, 2014 WL 4445953, at *2 (D.
Del. Sept. 8, 2014); Gen. Refractories Co. v. First State Ins.
Co., No. 04-3509, 2012 WL 262647, at *2 (E.D. Pa. Jan. 30,
2012); Westra Constr., Inc. v. U.S. Fidelity & Guar. Co., 546 F.
Supp. 2d 194, 197 (M.D. Pa. 2008); In re Linerboard Antitrust
Litig., 333 F. Supp. 2d 333, 338-39 (E.D. Pa. 2004); Wodecki v.
Nationwide Ins. Co., 107 F.R.D. 118, 119 (W.D. Pa. 1985);
Butcher & Singer, Inc. v. Kellam, 623 F. Supp. 418, 422 (D. Del.
1985).

Here, Cosby asserts that he should be permitted to
intervene due to commonalities between this case and his

13

defenses in his state court criminal case. Hr'g Tr. 12:5-23. But this Court has no independent basis for subject matter jurisdiction over any claim or defense in Cosby's state court criminal case, in which he is charged with violations of Pennsylvania criminal law. Accordingly, Cosby is not entitled to permissive intervention and the Court will deny Cosby's motion to participate in Judge Ferman's deposition.

      C.    <u>Judge Ferman Rule 24(b) Motion</u>

        Finally, Judge Ferman also moves to intervene under Rule 24(b).

        On June 8, 2016, Plaintiff served Judge Ferman with a subpoena to testify at a deposition in this action. Judge Ferman intends to appear for her deposition, but seeks to intervene under Rule 24(b) for the purpose of obtaining a protective order prohibiting any inquiry into areas protected by the law enforcement privilege,[9] the deliberative process privilege,[10] or

---

[9]     The law enforcement privilege – sometimes called the investigative privilege – allows the government to "protect information from being discovered during ongoing government investigations." <u>Commonwealth v. Kauffman</u>, 605 A.2d 1243, 1246 (Pa. Super. Ct. 1992). When asserted, the privilege "requires the court to balance the government's interest in ensuring the secrecy of the documents whose discovery is sought against the need of the private litigant to obtain discovery of relevant materials in possession of the government." <u>Id.</u> at 1247.

[10]    The deliberative process privilege applies to "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." <u>In re Grand Jury</u>, 821 F.2d 946, 959 (3d Cir. 1987). "[A] party's assertion of the

CHRIA.[11] Judge Ferman contends that any questions involving the investigation of Cosby, and the decisionmaking process concerning the decision whether to charge Cosby, would implicate these privileges.

The Court will deny this motion – without prejudice – as premature. Judge Ferman's deposition has not yet occurred; no questions have been asked and no privileges invoked. Indeed, in order to rule on at least two of the privileges Judge Ferman anticipates invoking, the Court would be required to balance various interests – which, in the abstract, would be challenging at best. Before the Court knows what questions will be asked of Judge Ferman, and what objections will be asserted in response, the Court cannot accurately determine which interests are actually at stake, and whose rights would or would not be

---

deliberative process privilege requires a two-step review in the district court. First, it must decide whether the communications are in fact privileged. Second, the court must balance the parties' interests." Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 854 (3d Cir. 1995).

[11]     CHRIA "creates a mechanism by which citizens may gain access to certain law enforcement records," including their own criminal history information. Curtis v. McHenry, 172 F.R.D. 162, 163 (W.D. Pa. 1997). Accordingly, it clarifies some of the circumstances under which certain information may or may not be provided to the public. CHRIA states that "[i]nvestigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties." 18 Pa. Cons. Stat. § 9106(c)(4).

threatened by the disclosure of any given piece of information.[12] If the Court's assistance is later required, the parties may bring any concrete disputes to the Court's attention.

**III. CONCLUSION**

For the foregoing reasons, the Court will (1) grant in part Cosby's motion to intervene to attend the deposition of Andrea Constand; (2) deny Cosby's motion to intervene to participate in the deposition of Judge Risa Ferman; and (3) deny without prejudice Judge Ferman's motion to intervene. An appropriate order follows.

---

[12]     The Court offers no views as to whether Judge Ferman is entitled to assert these privileges in the first place.